UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRENT WELLS,

    Plaintiff,

v.                                    Case No: 6:17-cv-1805-Orl-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Brent Wells, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed an application for SSI on October 24, 2013, and an application for a period of disability and DIB on October 25, 2013. (Tr. 193-99, 200-02). In both applications Plaintiff alleged disability beginning October 2, 2011. (Tr. 193, 200). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 118-20, 129-31, 133-37, 138-42). Plaintiff requested a hearing and, on November 1, 2016, a hearing was held before Administrative Law Judge K. Barlow (the "ALJ"). (Tr. 39-63). On July 7, 2013, the ALJ entered an unfavorable decision finding Plaintiff not disabled. (Tr. 20-38). Plaintiff appealed the ALJ's decision and, on August 29, 2017, the Appeals Council denied Plaintiff's request. (Tr. 1-6). Plaintiff initiated the instant action by Complaint (Doc. 1) on October 18, 2017. The parties having filed a joint memorandum setting forth their respective positions, this case is ripe for review.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 2, 2011, the alleged onset date. (Tr. 22). At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder, anxiety related disorders, cognitive disorder, degenerative disc disease of lumbar spine with bilateral L4-5 radiculopathy, thoracolumbar levoscoliosis, chronic pain syndrome, hyperlipidemia,

hypogonadism and hypertension. (Tr. 22). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to simple, routine tasks with no exposure to the public. He must be allowed to sit every hour and perform duties from both a seated and a standing position as well as use a cane to ambulate to and from the duty station.

(Tr. 24). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a condo manager and tv/cable services sales representative. (Tr. 31).

At step five, the ALJ relied upon the testimony of a vocational expert ("VE") and found that an individual with Plaintiff's age, education, work experience and RFC could work as a hospital product assembler and small products assembler. (Tr. 32). The ALJ concluded that Plaintiff was not under a disability from October 2, 2011, through November 28, 2016, the date of the decision. (Tr. 33).

**II.     Analysis**

Plaintiff raises four issues on appeal: (1) whether the ALJ erred by failing to properly consider the opinion of Lisa S. Merilson, Psy.D.; (2) whether the ALJ erred by failing to fully develop the record; (3) whether the ALJ erred by posing an incomplete hypothetical question to the vocational expert; and (4) whether the ALJ erred by failing to properly evaluate Plaintiff's credibility. The Court will address each issue in turn.

### a) Whether the ALJ erred by failing to properly consider the opinion of Lisa S. Merilson, Psy.D.

Plaintiff argues that the ALJ erred by failing to give appropriate weight to the opinion of evaluating neuropsychologist Dr. Merilson. (Doc. 24 p. 17-22). Plaintiff argues that the ALJ's reasoning for according Dr. Merilson's opinion little weight is insufficient and unsupported by substantial evidence. (Doc. 24 p. 17-22). In response, Defendant argues that the ALJ properly considered the opinion of Dr. Merilson and that substantial evidence supports the ALJ's determination that the opinion is entitled to little weight. (Doc. 24 p. 22-25).

The record shows that Plaintiff was referred to Dr. Merilson for an evaluation by Plaintiff's neurologist Olimpio Cunha, M.D. (Tr. 704). Dr. Merilson examined Plaintiff on April 20 and April 24, 2015. (Tr. 704). Dr. Merilson noted that Plaintiff would have trouble recalling and learning new tasks, adapting to changes, responding to stress, and interacting appropriately in the workplace. Dr. Merilson found that Plaintiff was moderately limited in his ability to: remember locations and work-like procedures; carry out detailed instructions; perform activities when in a schedule; maintain regular attendance; be punctual within customary tolerances; make simple work related decisions; interact appropriately with the general public; accept instructions and respondent appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; travel to unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (Tr. 710-11). Dr. Merilson noted that Plaintiff was markedly limited in his ability to: understand and remember detailed instructions; maintain attention and concentration for extended periods; work in coordination with and proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically-based

symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 710-11). Dr. Merilson noted that Plaintiff had a guarded prognosis in the ability to work in competitive involved employment. (Tr. 709).

In her decision, the ALJ explained the weight she accorded to Dr. Merilson's opinion as follows:

> As for the opinion of Dr. Merilson at Exhibit 12F/7-9, the undersigned gives it little weight as it is not consistent with the overall evidence of record including rather benign objective findings. Moreover, the undersigned notes that this provider found that his vocational abilities would likely improve with psychiatric evaluation/care, which the clamant has not yet had and therefore, the marked limitations are simply not consistent with medical records that show conservative care with relatively unremarkable mental status exams.

(Tr. 30-31).

An ALJ is required to state with particularity the weight he gives to the medical opinions of record and the reasons why. *Shaw v. Astrue*, 392 F. App'x 684, 686 (11th Cir. 2010) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)); *See also, McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006). Without such a statement, the reviewing court is unable to determine whether the decision of the Commissioner was supported by substantial evidence. *Id*. (citation omitted). "Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless 'good cause' is shown. *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing 20 C.F.R. §404.1527(d)(1), (2), (5); and *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). A doctor's opinion may be discredited when it is contrary to or unsupported by the evidence of record, or the opinion is inconsistent with the doctor's own medical records. *Id*. (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)). "Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial

evidence, there is no reversible error." *Id*. (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

In this case, the Court finds that substantial evidence supports the ALJ's finding that Dr. Merilson's opinion is entitled to little weight. A review of Dr. Merilson's records show that despite finding Plaintiff had marked and moderate limitations, she nevertheless observed that Plaintiff easily established rapport with the examiner, that he was appropriate and cooperative throughout, despite a depressed mood, and make a full effort with good task persistence and normal frustration tolerance. (Tr. 705-06). In the test results, Dr. Merilson noted Plaintiff "displayed no difficulty on more complex mental control tasks and no difficulty on response inhibition." (Tr. 706). In the summary section, Dr. Merilson noted only mild to moderate impairments in a few categories such as visual memory and visual incidental learning. (Tr. 708). Other areas of cognition remained intact. (Tr. 708). Dr. Merilson's own examination findings do not support the limitations included in the medical source statement.

Further, Dr. Merilson's opinion is contradicted by other evidence in the record. For example, in November 2012, Dr. Cunha noted a normal neurological exam, except for a history of a lazy right eye and diagnosed Plaintiff only with subjective short-term memory loss. (Tr. 343). Plaintiff visited Dr. Chewning for primary care needs in 2013 and 2014, including for complaints of anxiety and generally examinations had normal findings (Tr. 525-87, 599-600, 604-05, 609-10, 630-31, 635-369) and he was neurologically intact. Plaintiff returned to Dr. Cunha in 2014 after a two-year hiatus with nothing of note on the examination. (Tr. 589, 591). This evidence provides substantial evidence to support the ALJ's assessment to give little weight to Dr. Merilson's opinions because they are not supported by other evidence in the record.

The Court is cognizant that "[e]ven if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Although Plaintiff cites to evidence in the record to support his claim that Dr. Merilson's opinion should have been given more weight, it does not undermine the fact that substantial evidence supports the ALJ's determination. Accordingly, the Court will not disturb the ALJ's findings as to Dr. Merilson's opinion on review.

### b) Whether the ALJ erred by failing to fully develop the record.

Plaintiff argues that the ALJ erred by failing to fully develop the record as to Plaintiff's physical and mental health impairments. (Doc. 24 p. 25-27). Plaintiff contends that despite multiple records showing Plaintiff had cognitive deficits, no evaluator from the SSA ever evaluated Plaintiff in person with the full benefit of Plaintiff's medical record to determine the affect of Plaintiff's cognitive deficits on his ability to work. (Doc. 24 p. 26). Plaintiff argues that the ALJ should have ordered comprehensive evaluations of Plaintiff's mental health limitations and RFC. (Doc. 24 p. 27). In response, Defendant contends that the ALJ did not err by failing to develop the record. (Doc. 24 p. 27-30).

The Eleventh Circuit has stated that "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded . . . for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). In determining whether to remand for further development, "[t]he court should be guided by whether the record reveals any evidentiary gaps which result in unfairness or clear prejudice." *Id.*

In this case, Plaintiff has failed to demonstrate that his due process rights were violated by the ALJ to warrant remand. The record shows that the ALJ had sufficient information to find a physical RFC despite not having a medical source opinion from any of Plaintiff's treating physicians. The treatment notes show Plaintiff's chronic low back pain has been fairly well-controlled with medication. (Tr. 358, 530, 540, 545, 554, 559, 569, 574, 579, 621, 625, 628, 715, 717, 721, 756, 758). Despite complaints of various ailments of the years, Plaintiff generally had normal physical and psychological examination findings at appointments with primary care physician Dr. Chewning. (Tr. 525-88). Plaintiff also visited Dr. Ortolani in 2014 and 2015, whose treatment note show some muscle tenderness and spasms, but good range of motion in the spine and intact strength and reflexes. (Tr. 713-24, 731-59).

The ALJ also noted objective test results that supported the RFC. (Tr. 24-29). A November 2012 MRI of Plaintiff's brain revealed a 5mm nonenhancing lesion in right frontal lobe, but the remainder of the exam was non-specific. (Tr. 519). A January 2015 MRI of the brain showed an old right basal ganglia lacunar infarct but no evidence of acute ischemia. (Tr. 666). In March 2016, a nerve conduction study showed bilateral lumbar radiculopathy at L4-5 and an updated MRI in April 2016 revealed thoracolumbar levoscoliosis and other issues with the lumbar spine. (Tr. 29, 725-27, 728-30).

In addition, the ALJ considered the opinions from the state agency psychological consultants and physicians. In June 2013 and August 2014 respectively, Dr. Wiener and Dr. Weber opined Plaintiff had mild limitations in activities of daily living and social functioning and moderate limitations in concentration, persistence and pace. (Tr. 78-79, 102). In August, state agency physician Dr. Bigsby reviewed the record and opined Plaintiff could perform medium level

work. (Tr. 27, 104-06). Further, the ALJ had the benefit of Dr. Merilson's opinion as discussed above.

Plaintiff has failed to demonstrate that the ALJ erred by failing to develop the record. Accordingly, the Court rejects Plaintiff's request for a remand for the ALJ to obtain consultative examination findings.

### c) Whether the ALJ erred by posing an incomplete hypothetical question to the vocational expert.

Plaintiff argues that the ALJ erred by relying on the testimony of a vocational expert (VE) who responded to a hypothetical question that did not reflect the entirety of Plaintiff's functional limitations. (Doc. 24 p. 30-31). Specifically, Plaintiff contends that the hypothetical question did not account for the ALJ's findings that Plaintiff had moderate limitations in the areas of concentration, persistence, or pace and social functioning. (Doc. 24 p. 30). Defendant responds that the hypothetical question posed to the VE accounted for Plaintiff's moderate limitations in concentration, persistence, or pace and social functioning. (Doc. 24 p. 31-33).

In this case, the ALJ's hypothetical question to the VE specified an individual limited to simple, routine tasks and no exposure to the public. (Tr. 58). The Eleventh Circuit has held that a limitation to unskilled work accounts for a rating of moderate difficulties in concentration, persistence, or pace when the record shows that the claimant can perform unskilled work, and the record in Plaintiff's case shows that he could perform at least unskilled work. *See, e.g., Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017); *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 712-13 (11th Cir. 2015). Further, the ALJ accommodated Plaintiff's difficulties with social functioning by limiting the hypothetical question to include only jobs requiring no exposure to the public. Plaintiff failed to show that he had additional mental limitations, and he failed to meet his burden of proving that he could not perform the unskilled jobs identified by the

VE. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

### d) Whether the ALJ erred by failing to properly evaluate Plaintiff's credibility.

Plaintiff argues that the ALJ erred by failing to give adequate reasons for finding Plaintiff not entirely credible. (Doc. 24 p. 35-37). Plaintiff contends that there is significant evidence in the record to support Plaintiff's complaints as to the limiting effects of his impairments. (Doc. 24 p. 35-37). Defendant contends that the ALJ properly considered whether Plaintiff's subjective complaints of symptoms were consistent with the other evidence in the record. (Doc. 24 p. 37-39).

The Eleventh Circuit three-part pain standard that applies whenever a claimant asserts disability through testimony of pain or other subjective symptoms requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such a severity that it can be reasonably be expected to cause the alleged pain. *Foote v. Charter*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Kelly v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999). After considering claimant's subjective complaints, the ALJ may reject them as not credible, and that determination may be reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992). If the objective medical evidence does not confirm the severity of the alleged symptoms, but indicates that the claimant's impairment could reasonably be expected to produce some degree of pain and other symptoms, the ALJ evaluates the intensity and persistence of the claimant's symptoms and their effect on his ability to work by considering the objective medical evidence, the claimant's daily activates, treatment and medications received, and other factors concerning functional limitations and restrictions due to pain. *See* 20 C.F.R. § 404.1529.

Substantial evidence supports the ALJ's determination that Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of his alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 24-30). In her decision, the ALJ thoroughly discussed the medical evidence of record and explained her reasoning in finding that the evidence does not entirely support Plaintiff's subjective statements. Although Plaintiff was diagnosed with various conditions, diagnoses do not establish work-related limitations. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005). The objective medical findings from the relevant period support the ALJ's determination that Plaintiff's subjective complaints of disabling symptoms and limitations were not consistent with the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p; *Wilson*, 284 F.3d at 1225-26. Clinical examinations were generally normal, and do not reveal objective medical findings to support Plaintiff's allegations regarding his physical or mental condition. (Tr. 525-88, 713-24, 731-59).

Plaintiff cites to abnormal findings from the April 2016 MRI of his lumbar spine, but the mild findings on the MRI do not support the extent of limitations alleged by Plaintiff. (Tr. 728-30). That Dr. Ortolani and Dr. Cunha diagnosed various conditions also does not necessarily support the extent of limitations alleged by Plaintiff, because the diagnoses alone do not establish work-related limitations. Plaintiff also cites as support Dr. Merilson's medical source opinion of some marked limitations in Plaintiff's mental functioning, however as noted above, the ALJ properly gave that opinion little weight because it was not consistent with the other evidence in the record. The ALJ also properly considered Plaintiff's treatment, including that medication management was generally controlling his symptoms and that he did not always follow treatment,

such as when he drank alcohol against advice. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v); SSR 16-3p; *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

Substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints were not consistent with the other record evidence. Accordingly, the Court will not disturb the ALJ's findings on appeal.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 27, 2019.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties